IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ELZIE STEPHEN RODGERS, JR. ) | |
| AIS # 244536, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:18-CV-680-WKW |
| ) | |
| LT. DOMINIC S. WHITLEY, et al., ) | |
| ) | |
| Defendants. ) | |

**SUPPLEMENTAL RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. DISCUSSION**

The Magistrate Judge previously entered two recommendations in this case—one on March 31, 2021 (Doc. 50), and one on April 13, 2021 (Doc. 54)—finding that summary judgment is due to be granted to Defendants and Plaintiff's lawsuit should be dismissed. Doc. 57. The first of these recommended that Plaintiff's amended complaint filed on December 2, 2019 (Doc. 28) be dismissed as time-barred under the applicable statute of limitations because it sought to raise claims accruing on April 27, 2017 and May 9, 2017, more than two years before the amended complaint was filed.[1] Doc. 50 at 6. However, after Plaintiff received this recommendation, he mailed a letter to the Clerk of Court suggesting that he had filed another amended complaint prior to the filing of the time-barred complaint

---

[1] In his original complaint, filed July 23, 2018, Plaintiff brought claims about actions occurring on different dates at different correctional facilities (that is, on July 18, 2016, July 26, 2016, and August 8, 2016 at Bullock, Ventress and Easterling correctional facilities). (Doc. 1). The court required the Plaintiff to file an amended complaint which did not involve claims arising at different penal institutions. The Plaintiff was advised that his original complaint would be "superceded by the Amended Complaint." (Doc. 17 at 1).

which he believed might not be subject to the statute of limitations. *See* Docs. 23, 53. That amended complaint—Doc. 23—had been stricken for failure to comply with the requirements of a previous order. *See* Docs. 17, 24. After reviewing Plaintiff's letter, the court entered an amended recommendation which concluded that whether the filing date of the amended complaint was construed as December 2, 2019 or June 28, 2019 (the date on which Doc. 23 was entered on the docket), Plaintiff's April 27, 2017 and May 9, 2017 claims are still barred by the two-year statute of limitations. Doc. 54 at 2.

Plaintiff has now filed an objection to the March 31, 2021 and April 13, 2021 recommendations which raises a question requiring additional discussion. He contends that the prison mailbox rule saves the amended complaint docketed on June 28, 2019 from the two-year time bar. Doc. 57 at 2-4. Plaintiff represents that the amended complaint filed as Doc. 23—which contained the same claims stated in the time-barred amended complaint filed on December 2, 2019—was prepared and given to prison officials for mailing on March 25, 2019, with a verification of filing affirming that he placed it in the prison legal mailing system on that date. Doc. 23 at 4, Doc. 57 at 2-4. Plaintiff maintains that the claims stated in the amended complaint, which arose on April 27, 2017 and May 9, 2017, are not barred by the two-year statute of limitations because the prison mailbox rule mandates that the March 25, 2019 delivery date is the date that must be used for the limitations period calculation in this case. *See Garvey v. Vaughn,* 993 F. 2d 776, 783 (11th Cir. 1993) (In §1983 cases, "the date of filing shall be that of delivery to prison officials of a complaint or other papers destined for the district court for the purpose of ascertaining timeliness."). In *Garvey*, the court determined that because the prison authorities have the ability to

2

establish the correct date of delivery through their logs, they bear the "burden of proof for the pro se prisoner's date of delivering his document to be filed in court." *Id.* at 781. The court said that "[t]he teaching of *Houston* [*v. Lack*, 487 U.S. 266 (1988)] is that prison delay beyond the litigant's control cannot be fairly used in computing the time for appeal." *Id.* at 783.

    Plaintiff is correct in one respect: *Houston* establishes a bright line rule that at the moment prison authorities received his amended complaint, that complaint must be considered filed. *See Natson v. U.S.*, 494 Fed.Appx. 3, 6, 2012 WL 3793000, at *2 (11th Cir. 2012)(stating this rule in the §2255 context). It is also clear that, "[u]nless there is evidence to the contrary, like prison logs or other records, [the court must] assume that a prisoner's motion was delivered to prison authorities on the day he signed it." *U.S. v. Glover*, 686 F.3d 1203, 1205 (11th Cir. 2012); *see also Washington v. United States,* 243 F.3d 1299, 1301 (11th Cir. 2001). The government has the burden to prove that the date on which a petition—or, in this case, an amended complaint—was delivered was a date other than the date claimed by the inmate. *See, e.g., Natson*, 494 Fed.Appx. 3, 5, 2012 WL 3793000, at *1.

    Here, the government has not submitted evidence or argument concerning the Plaintiff's mailbox rule objection other than an affidavit from an administrative support assistant at the Bibb County Correctional Facility explaining that "Bibb County Correctional Facility does not keep a log of when an inmate gives mail to the mailroom and/or a prison official. Therefore, there is no evidence of when any mail is delivered to the mailroom and/or a prison official." Doc. 59-1. Ordinarily, this might end the matter,

3

and the court would simply take the Plaintiff at his word concerning the date on which he provided the amended complaint in question to prison officials for mailing.

However, as the Eleventh Circuit has clearly said, an inquiry about the specific date of delivery to prison officials is a question of fact, and the assumption of delivery on the day the inmate says he signed it applies *"[u]nless there is evidence to the contrary*, like prison logs or *other records.*" *Natson*, 494 Fed.Appx. 3, 5, 2012 WL 3793000, at *1 (first emphasis supplied, second emphasis in original); *see also Glover*, 686 F.3d at 1205 (same). The *Natson* court declined to read *Houston* to hold "that factual representations, about timing, by convicted felons must be accepted—as a matter of law—as accurate" unless a specific type of evidence (a "contemporaneous mail-received-from-prisoner log") is produced, and emphasized that other evidence may be competent to establish untimely filing. *Natson*, 494 Fed.Appx. 3, 5, 2012 WL 3793000, at *1; *see also Allen v. Culliver*, 471 F.3d 1196, 1198 (11th Cir. 2006)(District court may inquire as to the actual facts concerning whether or not, and when, a document was delivered to the prison authorities, and "may take into account any and all relevant circumstances… ."). In the instant case, the court is confronted with such other evidence on the face of its own record, which clearly contradicts the Plaintiff's representations and which it cannot ignore. This evidence takes two forms.

First, the Plaintiff expressly informed this court—through a motion which he verified under penalty of perjury he deposited in the prison mailbox on March 26, 2019—that he would *not* be filing an amended complaint by the deadline of March 26, 2019 set previously by order in Doc. 14, because he needed more time to do so. *See* Doc. 18. In this

4

motion, styled as a "Motion for Additional Time to Amend," the Plaintiff represented as follows:

> COMES NOW the Plaintiff, Elzie S. Rodgers, Jr., and hereby Respectfully Prays for 30 additional days to file his Amended Complaint in this case. As cause Plaintiff shows as follows:
>
> 1.) Per Order of this Court Plaintiff has been directed to file his Amended Complaint by March 26, 2019.
> 2.) Plaintiff has been unable, since receipt of said Order, to secure time in the law library due to Bibb County Corr. Fac. being placed on full lock-down status due to two (2) homocides in the dorm he lives in in early March, 2019.
> 3.) Plaintiff is unable to amend his complaint without further research. Due to the different claims occurring at 3 different institutions Plaintiff needs to ascertain whether he needs to drop claims already pursued and possibly change the style of the case to pursue his most valid claims. Plaintiff also needs time to determine the possibility of whether several of his claims, while involving several different prison facilities, arise sufficiently out of the same incident or facts so as to warrant consolidation into one case or, whether he must pursue separate suits on each.
> 4.) Plaintiff <u>DOES</u> <u>NOT</u> wish to attempt to litigate 3 separate 42 U.S.C. §1983 suits at once.
>
> WHEREFORE the above premises being duly considered Plaintiff Prays for 30 additional days in which to prepare and file his Amended Complaint herein.

Doc. 18 at 1-2.[2] However, the Plaintiff now asks the court to believe that *on the day before* he delivered this motion seeking additional time to amend his complaint to prison officials—March 25, 2019—Plaintiff actually deposited the amended complaint itself in the prison mailbox, despite the difficulties he outlined in his motion, his representation that he was "unable to amend his complaint without further research," and his urgent, and

---

[2] On April 2, 2019, the day after this motion was received and docketed, the court granted Plaintiff an extension of time from March 26, 2019 to April 16, 2019 to file his amended complaint. Doc. 19.

entirely contradictory, request on the following day for an extension of time to prepare this complaint. Doc. 57 at 2-3.

This strains credulity, particularly when one examines the second relevant form of evidence appearing on the court's own record: the mailing history[3] for both of these documents—the motion for additional time to amend (Doc. 18), and the amended complaint itself (Doc. 23), which allegedly were deposited for mailing one day apart—as well as the history of transmission of all of Plaintiff's other filings. As to Doc. 18, Plaintiff attested that he deposited this motion on March 26, 2019 in the prison maibox. While the postmark on the envelope is illegible, the motion was stamped as received by the Clerk of Court on April 1, 2019 and docketed on the same date—a span of just six calendar days between deposit and receipt. Doc. 18 at 2, 3. However, in stark contast, Plaintiff's amended complaint—which Plaintiff represented he deposited in the prison legal mail system just the day before Doc. 18, on March 25, 2019—*was not postmarked until June 26, 2019, and received by the Clerk on June 28, 2019—an astonishing difference of 95 days between deposit and receipt.* Doc. 23 at 1, 5.

---

[3] *See United States v. Jackson*, 2016 WL 3866610, at *2-3 (S.D.Tex. 2016)(considering an inmate's "prior mail history" with the court—and specifically comparing the difference (22 days) between an inmate's representation concerning the delivery date and the actual postmark date to the much shorter time of transmission for every other mailing but the one at issue)—in considering the application of the mailbox rule.); *see also Fallen v. U.S.,* 378 U.S. 139, 143–44 (1964) (noting, in deciding the timeliness of an inmate's appeal, that there was "no reason on the basis of what this record discloses to doubt that petitioner's date at the top of the letter was an accurate one," and that "[o]ther letters also mailed by petitioner from the prison took an equally long time to get to their destination."); *Rodriguez v. U.S.*, 2015 WL 3618577, at *3 (M.D.Fla. 2015) (Mailbox rule presumption was rebutted by evidence establishing that inmate did not deliver his motion and memorandum of law for mailing on June 21, 2009, as he claimed; that evidence included the fact that the court had no record of receiving the motion and memorandum until May 9, 2013, which, although not alone dispositive, was relevant.).

Of course, the court must consider the possibility that such an extraordinary delay was the fault of the correctional facility, either by negligence or by design. The Plaintiff alleges the latter. He contends—without evidence—that his amended complaint's "receipt by this Court over 3 months later was the result of tampering by the Prison Personnel with its timely mailing." Doc. 57 at 6. He also suggests that one of the mailboxes at the prison either was unlocked entirely, or secured only with a combination lock, which made inmate mail vulnerable to "being intercepted, stolen, lost or destroyed by other inmates." Doc. 60 at 5; *see also* Doc. 57 at 5. However, the Plaintiff does not explain why an unnamed person—either a prison official or an inmate—would maliciously (or even negligently) intercept his mail and then, some 93 days later, change his mind and thoughtfully deposit Plaintiff's amended complaint in the mail for transmission to the court. Plaintiff's arguments about mail tampering are speculative, conclusory, and illogical.

The mailing history of Plaintiff's other filings makes this fact even more apparent. For example, the first of Plaintiff's arguments alleging tampering by prison officials appears in an objection that plaintiff marked as served on May 11, 2021, which does not have a legible postmark but was stamped received by the Clerk on May 17, 2021, only six calendar days later. Doc. 57 at 1, 7. The second, charging possible interception by inmates, appears in an objection that the Plaintiff reported mailing on June 4, 2021, and that was postmarked on June 10, 2021 and received by the Clerk on June 14, 2021, only some 10 calendar days later. Doc. 60 at 1, 6, 7. These brief intervals between deposit and receipt are starkly divergent from the extraordinary span of time that allegedly elapsed between Plaintiff's purported deposit of his amended complaint on March 25, 2019, and its receipt

7

by the court more than three months later, on June 28, 2019. Indeed, as demonstrated by note 2, *infra*, the Plaintiff's filings consistently have been transmitted to the court within two weeks or less of their deposit in the prison mailbox (if the Plaintiff recorded it) or their postmark date (if not), and often much sooner.[4] The span between the attested date of deposit and postmarking—to the extent that information is available, since Plaintiff did not date every filing and a few postmarks are missing or illegible—generally ranged from one to eight days. None of the Plaintiff's other filings reflects anything like the extraordinary

---

[4] *See, e.g.,* the following: (1) Doc. 1 (complaint) dated July 15, 2018, postmark illegible, received by Clerk of Court on July 23, 2018 (Doc. 1 at 1, 4, 5); (2) Doc. 5 (motion for extension of time), prison mailbox deposit attested by plaintiff on August 31, 2018, postmarked Sept 6, 2018, received by Clerk on Sept 10, 2018 (Doc. 1, 3, 4); (3) Doc. 7 (response to order) dated October 2, 2018, postmarked October 4, 2018, received by Clerk on October 9, 2018 (Doc. 7 at 1, 6); (4) Doc. 9 (motion to amend suit), not dated by Plaintiff, postmarked January 3, 2019, received by Clerk on January 7 (Doc. 9 at 1, 3) (5) Doc. 11 (motion for extension of time), prison mailbox deposit attested on January 23, 2019, postmarked January 31, 2019, Clerk's receipt date illegible but docketed on February 4, 2019 (Doc. 2, 3); (6) Doc. 13 (renewed motion for leave to amend), not dated by Plaintiff, postmarked Febuary 20, 2019, received by Clerk on Febuary 22, 2019 (Doc. 1, 2); (7) Doc. 18 (motion for additional time to amend), prison mailbox deposit attested on March 26, 2019, postmark illegible, received by Clerk on April 1, 2019 (Doc. 18 at 1, 2, 3); (8) Doc. 20 (motion to file additional amended complaint), not dated by Plaintiff, postmarked May 24, 2019, received by Clerk on May 28, 2019 (Doc. 20 at 1, 3); (9) Doc. 26 (motion for extension of time), prison mailbox deposit attested on October 25, 2019, postmarked October 29, 2019, received by Clerk on October 31, 2019 (Doc. 26 at 1, 3, 4); (10) Doc. 28 (amended complaint), dated November 15, 2019, postmark not imaged, received by Clerk on December 2, 2019 (Doc. 26 at 1, 10, 11); (11) Doc. 29 (motion to clarify), not dated by Plaintiff, postmarked November 26, 2019, received by Clerk on December 2, 2019 (Doc. 29 at 1, 2); (12) Doc. 47 (motion for extension of time), prison mailbox deposit attested on Aug. 11, 2020, postmarked August 13, 2020, received by Clerk on August 17, 2020 (Doc. 47 at 1, 2, 3); (13) Doc. 49 (response to answer), prison mailbox deposit attested September 9, 2020, postmarked September 17, 2020, received by Clerk on September 21, 2020 (Doc. 49 at 1, 3, 4); (14) Doc. 51 (motion for extention of time to object), prison mailbox deposit attested on April 8, 2021, postmarked April 13, 2021, received by Clerk on April 19, 2021 (Doc. 51 at 1, 2, 3); (15) Doc. 53 (response to order) dated April 22, 2021, postmarked April 23, 2021, received by Clerk on April 26, 2021 (Doc. 53 at 1, 2); (16) Doc. 55 (motion for extension of deadline) dated May 6, 2021, postmarked May 11, 2021, received date is illegible but filed on May 13, 2021 (Doc. 55 at 1, 2, 3); (17) Doc. 57 (objection to recommendations), prison mailbox deposit attested on May 11, 2021, postmark illegible, received by Clerk on May 17, 2021 (Doc. 57 at 1, 7, 8); (18) Doc. 60 (objection to order), prison mailbox deposit attested on June 4, 2021, postmarked June 8, 2021, received by Clerk on June 14, 2021 (Doc. 60 at 1, 6, 7).

95-day delay from deposit to receipt that Plaintiff suggests this court must overlook—or attribute to dark, vague, and speculative causes—when it comes to his amended complaint.[5]

Thus, in the face of clear record evidence which renders Plaintiff's representations concerning the mailing date unreliable or mendacious—including the Plaintiff's own admission in his March 26, 2019 motion, deposited for mailing on the deadline for the filing of his amended complaint, that he had been unable to prepare the amended complaint by this deadline (Doc. 18)—the court concludes that it cannot assume under the mailbox rule that the Plaintiff's amended complaint (Doc. 23) was delivered to prison authorities

---

[5] The Plaintiff represents that another of his filings—a "second amended complaint," which he says he mailed on July 22, 2019—never made it to the court at all. Doc. 57 at 6; Doc. 60 at 5. Plaintiff maintains that this is evidence of the "tampering" with or "mishandling" of his mail by prison officials. Doc. 60 at 5. The court has not seen this document, and has no information as to whether or not it was ever deposited for mailing, but Plaintiff's argument is actually consistent with the principle that the history of mailing for a plaintiff's other filings constitutes evidence relevant to the determination of whether the mailbox rule applies. Unfortunately for the Plaintiff, on balance, that history does not weigh in his favor.

    The Plantiff also points to the fact that he sought to file an "additional" amended complaint in an undated motion postmarked May 24, 2019 that referred to an "amended complaint," which Plaintiff allegedly had previously "mailed/filed with the Court on March 26th, 2019," as evidence that he did indeed deposit Doc. 23 when he says he did. Doc. 20 at 1-2, Doc. 57 at 2-3. However, there is another possible explanation for this reference which the court deems more plausible: sometime between March 26, 2019, when Plaintiff asked for an extension of time from that deadline to amend his complaint (Doc. 18), and the date that he mailed the amended complaint postmarked on June 26, 2019 (Doc. 23)—Plaintiff prepared an amended complaint raising new claims against new defendants relating to events occurring on April 27, 2017 and May 9, 2017, and perhaps then realized that those claims might run afoul of the statute of limitations, which may have prompted him to take two actions: (1) to move to file the "additional" amended complaint and include a reference to a purported "amended complaint" allegedly filed previously, on March 26, 2019 (Doc. 20, postmarked May 24, 2019); and, thereafter, (2) to deposit an antedated amended complaint (albeit with the slightly different date of March 25, 2019) in the prison mailbox (Doc. 23, postmarked June 26, 2019). This scenario is far more logical than Plaintiff's own account, which asks the court to believe (1) that he deposited an amended complaint for mailing on March 25 or 26, 2019, either the day before or on the same day he also moved for additional time to prepare it; and (2) that his amended complaint was thereafter waylaid by unknown villains, who had not disturbed any of his other mailings, and then miraculously found and postmarked for delivery to the court 93 days later.

    However, the court need not determine whether what it imagines to be a more plausible scenario actually occurred as it supposes, or why the Plaintiff took the actions he took. It is sufficient to conclude here that the Plaintiff's allegation that he prepared and delivered his amended complaint (Doc. 23) to prison officials for mailing on March 25 or 26, 2019—for whatever reason he chose to make that representation—is contradicted by the record.

on the day he purportedly signed it. Thus, the court turns to the postmark date of the amended complaint to determine the date on which this pleading was delivered for mailing. *See Tuff v. Widener*, 2013 WL 3804579, at *5 (S.D.Ga. 2013) (Using the postmark date of Plaintiff's pleadings to determine the date these pleadings were delivered to prison officials for mailing when the mailing date was disputed.). That date—June 26, 2019—is more than two years after both of the dates on which the claims set out in the amended complaint (Doc. 23) accrued, on April 27, 2017 and May 9, 2017.

For these reasons and the reasons more fully stated in its Recommendation (Doc. 50) and Amended Recommendation (Doc. 54), the court concludes that the Plaintiff's amended complaint (Doc. 23) is barred by the statute of limitations and this action is due to be dismissed.[6]

## II. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The Defendants' motion for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the Defendants.

3. This case be DISMISSED with prejudice.

4. No costs be taxed.

On or before **September 27, 2021**, the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal

---

[6] The court does not reach the question of whether an amended complaint previously stricken by the court can be revived for purposes of defeating the statute of limitations.

conclusions in the Recommendation to which the objection is made. Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, on this the 13th day of September, 2021.

/s/ Susan Russ Walker  
Susan Russ Walker  
United States Magistrate Judge